# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**TARIIQ JONES**,

     Plaintiff,

v

**UNIVERSITY OF DETROIT MERCY**, a Private University;
**ROBERT VOWELS**, an individual;
and **BACARI ALEXANDER**,
an individual,

     Defendants.

Civil Action No.
Hon.

---

Andrew J. Laurila (P78880)
James B. Rasor (P43476)
**RASOR LAW FIRM, PLLC**
Attorneys for *Plaintiff*
201 East Fourth Street
Royal Oak, Michigan 48067
(248) 543-9000 / (248) 543-9050 Fax
ajl@rasorlawfirm.com

---

## <u>COMPLAINT & JURY DEMAND</u>

     **NOW COMES** Plaintiff, TARIIQ JONES, by and through his attorneys, RASOR LAW FIRM, PLLC, and for his Complaint against the above-named Defendants, states as follows:

RASOR LAW FIRM, PLLC

## PARTIES

1.     At all relevant times, Plaintiff Tariiq Jones ("Jones"), was a resident of the City of Detroit, County of Wayne, State of Michigan.

2.     Defendant University of Detroit Mercy ("UDM") is a private co-educational university located in Wayne County, Michigan and is a recipient of federal funds within the meaning of 20 § U.S.C. 1681(a).

3.     Upon information and belief, Defendant Robert Vowels is a citizen of the State of Michigan and was at all times relevant to this action employed as Defendant UDM's Athletic Director, which is the highest position within the University's athletic department.

4.     At all material times, Defendant Vowels was acting in his individual capacity and within the course and scope of his employment as Athletic Director and he is an "agent" pursuant Elliott-Larsen Civil Rights Act, M.C.L. § 37.2401.

5.     At all material times during this litigation, Defendant Bacari Alexander was the head men's basketball coach for UDM.

6.     This lawsuit arises out of events occurring within the City of Detroit, County of Wayne, and State of Michigan.

7.     Defendants are jointly and severally liable to Plaintiff for the claims asserted therein.

## JURISDICTION AND VENUE

8.      This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to 20 U.S.C. § 1681 and pendant claims arising under the Elliott-Larsen Civil Rights Act.

9.      This Court has jurisdiction over the claims brought pursuant to 20 U.S.C. § 1681 based upon the laws of the United States pursuant to 28 U.S.C. §§ 1331, 1343.  This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

10.      The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

11.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Wayne, and Defendant UDM is a University located within this district.

## COMMON FACTUAL ALLEGATIONS

12.      Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 11, as if fully set forth herein.

13.     Prior to the events giving rise to this litigation, Plaintiff Jones had played college basketball at the Junior College level, which provided him necessary experience to go on and play D-I college basketball.

14.     Due to his ability and success in the lower tiers of college basketball, Defendant UDM, specifically Defendant Alexander, recruited Plaintiff to enroll and play basketball at Defendant UDM, an NCAA D-I program in the Horizon League.

15.     During his recruitment, various employees involved in Defendant UDM's basketball program, including Defendant Alexander, made promises to Plaintiff about the success playing for UDM would provide him, his potential future playing basketball professionally, and the great education he would receive as a UDM student athlete.

16.     Given these promises and his desire to further his basketball career and receive a good education, Plaintiff signed a letter of intent to attend Defendant UDM and play basketball there.

17.     Plaintiff received a full athletic scholarship from Defendant UDM as a condition of playing basketball and began attending classes in the Fall of 2017.

18.     The team opened the season with an exhibition against Wayne State University, where Plaintiff scored 13 points and added five rebounds.

19.     At this time, Plaintiff's future looked bright as he was one of Defendant UDM's best players and would have various opportunities to showcase his ability on a national level as the season progressed.

20.     In early November the team had been practicing in anticipation of a contest against Virginia Tech.

21.     At the end of the practice session on November 6, 2017, the team, including Plaintiff, Defendant Alexander and various other player huddled up.

22.     In response to a simple statement Plaintiff made to Defendant Alexander during the team huddle, Defendant Alexander turned to Plaintiff, aggressively grabbed his genitals through his pants so the outline could be seen while thrusting his hips in Plaintiff's direction, and yelled at Plaintiff, "suck my dick!"

23.     Defendant Alexander stood only approximately three to five feet away from Plaintiff as he yelled and thrusted his hips—the outline of his genitals clearly visible—towards Plaintiff.

24.     Plaintiff was shocked and embarrassed during this sexually-charged encounter, particularly as it occurred in front of all his teammates.

25.     Plaintiff filed a police report with the UDM Police regarding this incident; upon information and belief, this complaint was disregarded by

Defendant's Public Safety department despite clearly involving sexual-related misconduct between a coach and a student-athlete.

26.     In the following days, various teammates of Plaintiff brought up the incident in a joking and mocking manner which only furthered Plaintiff's embarrassment and shame.

27.     On November 13, 2017, Plaintiff had a meeting with Defendant Alexander and Defendant Vowels regarding this incident; Defendant Vowels orchestrated the meeting.

28.     Defendant Alexander was thereafter suspended on or around November 14, 2017.

29.     At no point in the immediate aftermath did any agent or representative explain to Plaintiff his rights under Title IX or Defendant UDM's related policies.

30. Defendant Alexander returned to his duties as head coach on or around December 6, 2017, which necessitated Plaintiff regularly being forced to interact and be around Defendant Alexander.

31.     Around the time Defendant Alexander returned to his duties, Defendant Vowels stated to the press: "The university is happy to have coach Alexander back with us and leading this team…We are thankful that

this internal personnel issue is now resolved and we look forward to coach Alexander's return and a successful season."

32.    But the issue was not resolved, and because of that Plaintiff struggled academically, including critical examinations to conclude the Fall semester.

33.    As a result of these academic struggles, Plaintiff was deemed ineligible to partake in athletic activities, including playing basketball, in January of 2018, which was the bulk of the season.

34.    Plaintiff attempted to utilize academic resources through the basketball team, and he and an academic advisor came up with a plan to improve Plaintiff's grades during the second semester and restore Plaintiff's eligibility.

35.    On or around February 27, 2018, Plaintiff emailed Defendant's President, Antoine Garibaldi, explaining how this incident had significantly harmed him, how the continued presence of Defendant Alexander as his coach caused him further stress, even necessitating therapeutic treatment, and his anger with Defendant's lack of effort to address, resolve, and remedy the situation.

36.    In light of Defendant's failure to remedy the circumstances coupled with Plaintiff's ongoing, related struggles, he filed a complaint of

discrimination/harassment with the Michigan Department of Civil Rights on or around March 15, 2018.

37.   Defendant UDM received notice of Plaintiff's charge on or around March 27, 2018.

38.   On or around March 26, 2018, Defendant UDM terminated Defendant Alexander's agreement with UDM as its head coach, however this had nothing to do with the incident with Plaintiff but was solely related to the team's poor performance under Alexander.

39.   Following Alexander's termination, Defendant Vowels stated: "Bacari helped inspire a strong work ethic among players and staff during his time and always challenged players to be their best both on and off the court….We thank him for his efforts and wish him the best."

40.   Defendant UDM did not adequately assist Plaintiff academically thereafter, even despite a plan that had been in put in place to do so, and given Plaintiff's significantly damaged emotional state, his academic performance continued to suffer.

41.   Plaintiff was notified on or around May 2, 2018, that based on his second semester grades he would be on academic probation again the following fall semester and ineligible to play basketball.

42.     Given Defendant UDM's egregious conduct and given the significant and continuing emotional trauma Plaintiff suffered, he was effectively forced to transfer.

43.     But because of Plaintiff's academic record at UDM and only short on-the-court success given the events at issue, he was unable to quickly find another University to play basketball at.

44.     By the time Plaintiff could have found a new school to play basketball at, his four-year eligibility to compete at the collegiate level pursuant to NCAA Rules had run.

45.     That is, Plaintiff never played again at the collegiate level, and this inability essentially eliminated his ability to continue his basketball career professionally, whether in the United States or internationally.

**COUNT I**
**VIOLATION OF 20 U.S.C. § 1681(a)**
**AS TO DEFENDANT UDM**

46.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 45, as if fully set forth herein.

47.     Title IX provides that "No person in the United States shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

48.    The Department of Education requires schools that fall under Title IX's broad scope to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student [...] complaints alleging any action that would be prohibited by" Title IX regulations, including sexual assault. 34 C.F.R § 106.8(b); 28 C.F.R. § 54.135(b).

49.    Plaintiff was a student at Defendant UDM and a "person" under Title IX.

50.    Defendant UDM receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX.

51.    Defendant UDM is required under Title IX to investigate allegations of sexual assault, sexual abuse, sexual harassment and/or sexually-related misconduct.

52.    Title IX covers the aforementioned conduct in relation to students, employees, and third parties.

53.    Defendant Alexander's unwanted, offensive sexual gesture(s) and statement towards Plaintiff was in violation of Title IX.

54.    The same day the incident occurred Plaintiff made a report to Defendant's Public Safety Department, yet it was disregarded and ignored.

55. A week after this offensive, public, sexually-charged incident between Plaintiff and Defendant Alexander, Defendant's Athletic Director, Robert Vowels, contacted Plaintiff to set up a meeting regarding the incident.

56.     Defendant UDM and its Athletic Department had actual and/or constructive notice of Defendant Alexander's sexual misconduct and Plaintiff's desire to alleviate and resolve this sexually-charged environment.

57.     Plaintiff reported how this sexually-charged conduct affected him and his ability to play basketball in the same, unresolved environment.

58.     Plaintiff sought assurances he would never again be forced to suffer embarrassment and shame at the hands of Alexander's sexually-charged misconduct; an individual Plaintiff looked up to and maintained a position of power over his basketball career.

59.     Despite the severity of Defendant Alexander's conduct, he returned to coaching just three weeks later.

60.     No one from Defendant UDM ever appraised Plaintiff how this unfortunate circumstance related to his Title IX rights.

61.     In fact, because Plaintiff was a male basketball player, Defendant considered this sexually-charged, highly offensive and vulgar conduct simply as "locker room talk," thus not requiring it to conduct an investigation as it normally would.

62.     Defendant UDM failed to investigate and take corrective action as required by Title IX.

63.     Despite Plaintiff's repeated efforts to have this situation remedied beyond Defendant Alexander's slap on the wrist, Defendant UDM later attributed the lack of investigation to Plaintiff's alleged desire to not proceed with the investigation.

64.     Given the above, Defendant UDM, through its agents and employees involved in enforcing and complying with Title IX, acted with deliberate indifference to known acts of sexual misconduct, specifically to Defendant Alexander's request to have Plaintiff "suck his dick" while grabbing his genitals so the outline could be seen through his clothing.

65.     Defendant UDM failed to adequately investigate this claim and this failure arose from Plaintiff's status as a male athlete; a stereotype evidenced by Defendant claiming this was simply "locker room talk."

66.     Because Defendant regarded Plaintiff's valid and serious complaint as "locker room talk," it did not take any corrective action, furthering Defendant's deliberate indifference by the lack of a response.

67.     Defendant's response, or lack thereof, to Plaintiff's multiple complaints was unreasonable because of deep-rooted stereotypes in male

locker rooms and had the effect of contributing and worsening Plaintiff's trauma.

68.     Defendant's failure to promptly and appropriately investigate, remedy, and respond to Defendant Alexander's sexual misconduct after receiving notice of the same subjected Plaintiff to continued and significant distress, forced Plaintiff to continue to be around Alexander and negatively affected Plaintiff to the extent his academics greatly suffered.

69.     That as a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity and has suffered mental anguish, physical and emotional distress, humiliation, mortification and embarrassment, as well as loss of professional reputation and loss of scholarship benefits.

70.     Pursuant to 42 U.S.C. § 1988 and 20 U.S.C. § 1681, Defendant is liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and

severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as actual, compensatory punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT II – DISCRIMINATION VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2401, AS TO DEFENDANTS UDM AND VOWELS

71.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 70, as if fully set forth herein.

72.     The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2402 prohibits an educational institution from discriminating "against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex."

73.     Defendant UDM is an "Educational institution" and Defendant Vowels is an "agent" pursuant to the Elliott-Larsen Civil Rights Act.

74.     Because of Plaintiff's gender he was denied the full and equal right to an adequate investigation by Defendant UDM's public safety department regarding his complaint, the right to participate in Defendant UDMs alleged Title IX "policies and procedures," and the right to his scholarship benefits and to continue to play basketball.

RASOR LAW FIRM, PLLC

75.     Defendant Vowels, as an agent and in his official capacity with Defendant UDM, discriminated against Plaintiff by refusing to legitimately treat this incident as serious and/or as prospective sexual misconduct giving rise to Defendant's Title IX's policies because Plaintiff was a male.

76.     Defendant discriminatorily termed Defendant Alexander's abhorrent, sexually-charged misconduct as "locker room talk," which played a significant factor in UDM's treatment of Plaintiff's complaint and was based on Plaintiff's gender.

77.     Defendant's Title IX "policies and procedures" utilize a discriminatorily double standard in that had Plaintiff been a female athlete and been told by a male coach to "suck his dick" while grabbing his genitals, Defendant would have taken significantly different actions.

78.     The discrimination that Plaintiff was subjected to while attempting to report and remedy Defendant Alexander's egregious sexual misconduct was so substantially disparate and less favorable than the treatment of non-male students reporting sexual misconduct that it raises an inference of discrimination.

79.     As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and

earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

80.     Pursuant to the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., Defendants are liable to Plaintiff for all damages allowed under state law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00, plus costs, interest, and reasonable attorney fees so wrongfully incurred, and grant further such relief as this Court deems fair and just under the circumstances.

## COUNT III – ASSAULT
## AS TO DEFENDANT ALEXANDER

81.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 80, as if fully set forth herein.

82.     During the November 6, 2017 events, Defendant Alexander aggressively and threateningly stated "Suck my dick" to Plaintiff while

RASOR LAW FIRM, PLLC

standing feet apart and physically touching his genitalia through his clothing so Plaintiff could see the outline and thrusting his body towards Plaintiff.

83.     These actions were done with the purpose of intentionally and/or unlawfully threatening Plaintiff with bodily injury, or more specifically that Defendant Alexander was forcibly going to make Plaintiff suck his dick against Plaintiff's will.

84.     These threats, given Defendant's close proximity to Plaintiff's person and encroaching behavior, among other situational circumstances, gave Plaintiff a well-founded fear of imminent peril and apprehension of an immediate harmful contact.

85.     Considering the forceful nature of Defendant's conduct, the visual of Defendant actually touching his genitals he threatened Plaintiff with, and the position of power he held over Plaintiff as the head basketball coach, Defendant had the apparent ability to carry out a physical attack against Plaintiff.

86.     As a direct and proximate result of Defendant Alexander's conduct, Plaintiff has sustained and continues to sustain, injuries and damages.

WHEREFORE, Plaintiff requests that this court enter judgment against Defendant Alexander in whatever amount he may be found to be

entitled, together with interest, costs, reasonable attorney fees, and such other relief as the court deems just under the circumstances.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT ALEXANDER AND VOWELS

87.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 86, as if fully set forth herein.

88.     Defendant Alexander's conduct towards Plaintiff, described above, was extreme and outrageous and went beyond all possible bounds of decency.

89.     Defendant Alexander, knowing his position of power/authority over Plaintiff and knowing his influence over Plaintiff, a young, aspiring basketball player, acted extreme and outrageous in publicly telling Plaintiff to "suck his dick."

90.     Defendant Alexander intended to cause Plaintiff severe emotional distress or acted with reckless disregard as to causing Plaintiff's severe emotional trauma.

91.     Defendant Vowels' conduct towards Plaintiff, described above, was extreme and outrageous and went beyond all possible bounds of decency.

RASOR LAW FIRM, PLLC

92.    Defendant Vowels made Plaintiff and Defendant Alexander meet just days after Defendant Alexander's egregious conduct.

93.    Defendant Vowels, in light of the clear distress Plaintiff suffered and the egregiousness of the conduct, failed to adequately investigate the allegations and follow guidelines set forth in Title IX for situations like this.

94.    Despite knowledge of how these events traumatized Plaintiff, Defendant Vowels stated on December 6 regarding Defendant Alexander's outrageous conduct: "We are thankful that this internal personnel issue is now resolved and we look forward to coach Alexander's return and a successful season."

95.    Defendant Vowels made this public statement, furthering Plaintiff's emotional trauma, knowing the matter was not "resolved."

96.    Defendant Vowels intended to cause Plaintiff severe emotional distress or acted with reckless disregard as to causing Plaintiff's severe emotional trauma.

97.    The above conduct described herein did in fact cause Plaintiff to suffer severe emotional distress, requiring him to begin seeking therapeutic treatment and continue to do so.

98.   Plaintiff suffered from severe psychological harm resulting from the above-referenced conduct.

99.   As a result of the conduct described above, Plaintiff suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff requests that this court enter judgment against Defendant Clark in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and such other relief as the court deems just under the circumstances.

RESPECTFULLY SUBMITTED:

**THE RASOR LAW FIRM**

/s/ Andrew Laurila
Andrew Laurila (P78880)
Attorney for *Plaintiff*
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
(248) 544-9300/(248) 543-9050 Fax
ajl@rasorlawfirm.com

Dated: July 8, 2019

**DEMAND FOR JURY TRIAL**

**NOW COMES** Plaintiff, Tariiq Jones, by and through his attorneys, RASOR LAW FIRM, PLLC, and hereby demands a trial by jury in the above-captioned cause of action.

RASOR LAW FIRM, PLLC

RESPECTFULLY SUBMITTED:

**THE RASOR LAW FIRM**

/s/ Andrew Laurila
Andrew Laurila (P78880)
Attorney for *Plaintiff*
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
(248) 544-9300/(248) 543-9050 Fax
ajl@rasorlawfirm.com

Dated: July 8, 2019

RASOR LAW FIRM, PLLC